UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EDWARD G. KENNEY,

                         Plaintiff,               No. 07-CV-6442 CJS

     -vs-

                                                  DECISION AND ORDER

GENESEE VALLEY BOARD OF COOPERATIVE
EDUCATIONAL SERVICES and MICHAEL A.
GLOVER, Individually and as Superintendent
of the Genesee Valley Board of Cooperative
 Educational Services,

                         Defendants.
_____

APPEARANCES

For Plaintiff:                 Theodore S. Kantor, Esq.
                              Bilgore, Reich, Levine & Kantor
                              950 Reynolds Arcade Bldg.
                              16 East Main Street
                              Rochester, New York 14614-1891

For Defendants:            Brian Laudadio, Esq.
                              Harris Beach PLLC
                              99 Garnsey Road
                              Pittsford, New York 14534

INTRODUCTION

     This is an action alleging freedom-of-speech retaliation claims, pursuant to the

First Amendment of the United States Constitution and the New York State Constitution,

as well as state-law claims for defamation, prima facie tort, intentional infliction of

emotional distress and negligent infliction of emotional distress.  Now before the Court is

Defendants' motion [#8] to dismiss Plaintiff's entire complaint, pursuant to Federal Rule

of Civil Procedure ("FRCP") 12(b)(6).  For the reasons that follow, Plaintiff's free-speech

1

retaliation claims are dismissed with prejudice, and the Court will decline to exercise

supplemental jurisdiction over the remaining claims, pursuant to 28 U.S.C. § 1367(c)(3).

BACKGROUND

The following facts, taken from the Complaint, are accepted as true for purposes

of this motion.  At all relevant times the Genesee Valley Board of Cooperative

Educational Services ("BOCES") was an educational organization located in LeRoy, New

York.  Michael Glover ("Glover") was the Superintendent of BOCES.  Plaintiff Edward

Kenney ("Plaintiff") was employed by BOCES as a School Resource Officer and Criminal

Justice Instructor, and was also employed as a police officer by the Village of Mt. Morris,

New York.  In or about September 2006, while teaching a class at BOCES, Plaintiff made

a "power point presentation to other teachers [on the topic] of law enforcement and

ballistics." (Complaint ¶ 7).  According to the Complaint, "[t]he substance of the Plaintiff's

audio and video presentations involved the science and math of ballistics and the effects

of bullets on human bodies, which subjects constituted genuine issues of public concern

and interest to the classes being taught by the Plaintiff."  (*Id*. at ¶ 8).  Significantly, for

purposes of this action, Plaintiff's presentation included a video recording, apparently

obtained from a police agency, of an individual committing suicide by shooting himself in

the head with a handgun ("the suicide video").

According to the Complaint, the suicide video was "directly related to the law

enforcement curriculum which the Plaintiff was employed . . . to teach," and was

"presented as . . . a means of providing instructional materials and information to other

teachers." (*Id*. at ¶ ¶ 9,14).  The Complaint further alleges that at least two of Plaintiff's

supervisors, including BOCES' Director of Instruction and the Principal of the Building in

2

which Plaintiff taught, had approved Plaintiff's use of the suicide video.

Nevertheless, Defendant Glover, the BOCES Superintendent, determined that the suicide video was inappropriate, and consequently, he suspended Plaintiff.  Later, on or about September 21, 2006, Glover told Plaintiff that unless he resigned, his employment would be terminated immediately.  According to the Complaint, Glover's actions were directly related to Plaintiff's use of the suicide video. (Complaint ¶ 7) ("The Plaintiff was informed by . . . Glover, that the reason for the suspension and subsequent forced resignation and/or termination concerned the content of an instructional video shown by the Plaintiff.") However, the Complaint also alleges that Glover was motivated, "at least in part," by a desire to punish Plaintiff in retaliation for Plaintiff's prior arrest of a BOCES student, which, according to Plaintiff, Glover had wanted to "suppress and cover up." (*Id*. at ¶ 19).[1]  Also on September 21, 2006, Glover allegedly "threatened Plaintiff's livelihood," and told Plaintiff that he would have Plaintiff arrested if Plaintiff ever "set foot" back on BOCES' property, even if he did so in his capacity as a police officer. (*Id*. at ¶ 18).

Following Plaintiff's "forced resignation and/or termination," BOCES called a staff meeting and announced that Plaintiff had "resigned." (*Id*. at ¶ 21).  Subsequently, "numerous" faculty and staff contacted Plaintiff "to find out what was going on," which caused Plaintiff embarrassment and humiliation. (*Id*. at ¶  23).

On or about August 6, 2007, Plaintiff commenced this action in New York State Supreme Court, Genesee County.  The Complaint alleges the following claims: 1)

---

[1] The Complaint contains no other information regarding the arrest.  However, during oral argument, Plaintiff's counsel indicated that the arrest occurred approximately one year before the termination of Plaintiff's employment.

"violat[ation of] the Plaintiff's U.S. Constitution's First Amendment Freedom of Speech rights and his Freedom of Speech rights pursuant to the New York State Constitution"; 2) prima facie tort; 3) defamation; 4) intentional infliction of emotional distress; and 5) negligent infliction of emotional distress. (Complaint ¶ ¶ 20, 27).  On September 10, 2007, Defendants removed the subject action to federal court .

Subsequently, on September 14, 2007, Defendants filed the subject motion to dismiss.  In that regard, Defendants contend that the "free speech" claims must be dismissed, because the Complaint does not allege that Plaintiff engaged in protected activity.  Defendants also maintain that the defamation claim must be dismissed, since the Complaint fails to identify a defamatory statement and fails to allege special damages.  As for the prima facie tort claim, Defendants contend that it fails to allege special damages and also fails to allege that Defendants acted with disinterested malevolence.  Finally, Defendants contend that the intentional infliction of emotional distress claim and the negligent infliction of emotional distress claim are deficient, since the former fails to allege extreme or outrageous conduct, while the latter fails to allege that Plaintiff was put in fear for his physical safety.

In opposition to the motion, Plaintiff maintains that his Complaint adequately states claims for which he is entitled to relief, and alternatively, requests leave to "amend his Complaint and to re-plead any allegations of his Complaint, without prejudice [sic], to correct any defects in his pleadings as directed by [the] Court." (Plaintiff's Memo of Law at 4).  With regard to amending the complaint, Plaintiff has not submitted a proposed amended complaint or otherwise indicated how he might amend the current Complaint.

On January 31, 2008, counsel for the parties appeared before the undersigned for

4

oral argument of the motion.  The Court, having thoroughly considered the parties' written submissions and the arguments of counsel, now dismisses Plaintiff's free-speech retaliation claims with prejudice, and declines to exercise jurisdiction over the remaining claims, pursuant to 28 U.S.C. § 1367(c)(3).

ANALYSIS

*The 12(b)(6) Standard*

In ruling upon a motion to dismiss made pursuant to FRCP 12(b)(6), the Court must construe

> the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor.  Although the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice.  To survive dismissal, the plaintiff must provide the grounds upon which her claim rests through factual allegations sufficient to raise a right to relief above the speculative level.

*Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 131 (2d Cir. 2007) (citations and internal quotation marks omitted).

*Freedom of Speech Claims*

Plaintiff purports to assert free-speech retaliation claims under the First Amendment, pursuant to 42 U.S.C. § 1983, and the New York State Constitution, and the analysis of both claims is the same. *Sanchez v. Turner*, No. 00 Civ. 1674(AGS), 2002 WL 1343754 at *4, n. 4 (S.D.N.Y. Jun. 19, 2002) (citations omitted).  The elements of the claim are well-settled:

> A public employee who makes a First Amendment claim of employment retaliation under § 1983 must show that: (1) his speech addressed a matter of public concern, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his speech and that adverse employment decision, so that it can be said that the plaintiff's speech was a motivating factor in the adverse employment action.

5

*Cioffi v. Averill Park Central School Dist. Board of Ed.*, 444 F.3d 158, 162 (2d Cir. 2006)

(citation omitted), cert. den. 127 S.Ct. 382.  As to the first of these elements, "[w]hether an

employee's speech addresses a matter of public concern must be determined by the

content, form, and context of a given statement, as revealed by the whole record." *Connick*

*v. Myers*, 461 U.S. 138, 147-48, 103 S.Ct. 1684, 1690 (1983).  Moreover, "[t]he inquiry into

the protected status of speech is one of law, not fact." *Id.*, 461 U.S. at 148, 103 S.Ct. at

1690 n. 7.

        In determining whether speech involves a matter of public concern, it is clear that

in general, "when public employees make statements pursuant to their official duties, the

employees are not speaking as citizens for First Amendment purposes, and the

Constitution does not insulate their communications from employer discipline." *Garcetti v.*

*Ceballos*, 547 U.S. 410, 126 S.Ct. 1951, 1960 (2006).  In that regard, the *Garcetti*

decision reiterated that "while the First Amendment invests public employees with certain

rights, it does not empower them to constitutionalize the employee grievance," and that

"the First Amendment does not prohibit managerial discipline based on an employee's

expressions made pursuant to official responsibilities. *Id.*, 126 S.Ct. at 1959, 1961

(citation omitted).

        As Plaintiff correctly observes, the *Garcetti* decision declined to address whether

that rule "would apply in the same manner to a case involving speech related to

scholarship or teaching." *Id.*, 126 S.Ct. at 1962.  Nevertheless, other federal courts have

held that communications made by a teacher as part of a school curriculum[2] do not

---

        [2]The Court here is not referring to a situation where a school teacher, in his or her capacity as a
private citizen, publically criticizes a public school's choice of curriculum.

involve matters of public concern.  For example, in *Lee v. York County Sch. Div.*, 484

F.3d 687, 697 (4th Cir. 2007), the Fourth Circuit stated that,

> when a First Amendment free speech dispute involves a teacher-employee
> who is speaking within the classroom, the determination of whether her
> speech involves a matter of public concern is dependent on whether or not
> the speech is curricular. This determination-whether the contested speech
> is curricular in nature-is a question of law for the court.
> ***
> In evaluating whether a schoolteacher's in-class speech is curricular in
> nature, and thus not a matter of public concern, we are obliged to apply the
> *Hazelwood* definition of "curriculum."  To be curricular under this definition,
> the contested speech must satisfy both of the definition's categories of
> requirements. The *Hazelwood* definition first explains that, in order for a
> school board to regulate speech, such speech must constitute
> school-sponsored expression bearing the imprimatur of the school.
> *Hazelwood* then narrows this broad category by also requiring that, in order
> to be considered curricular in nature, the speech must also be supervised
> by faculty members and designed to impart particular knowledge to the
> students.

*Id.*, 484 F.3d at 697 (citing *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 267, 108

S.Ct. 562, 98 L.Ed.2d 592 (1988); other citations and footnotes omitted); see also,

*Kirkland v. Northside Independent School Dist.*, 890 F.2d 794, 798 -799 (5th Cir. 1989)

("[I]ssues do not rise to a level of 'public concern' by virtue of the speaker's interest in the

subject matter; rather, they achieve that protected status if the words or conduct are

conveyed by the teacher in his *role as a citizen* and not in his *role as an employee* of the

school district.") (emphasis in original; citation and footnote omitted); see also, *Silano v.*

*Sag Harbor Union Free Sch. Dist. Bd. of Educ.*, 42 F.3d 719 (2d Cir. 1994) (Holding that

a high school lecturer "had no First Amendment right to use a film-clip showing bare-

breasted women in a lecture to a tenth-grade mathematics class.")[3]; *Bicknell v.*

---

[3]In *Silano*, the Second Circuit did not discuss whether the lecturer's use of the subject
photographs constituted a matter of public concern, but nevertheless, determined that, because the
school district's actions were "reasonably related to legitimate pedagogical concerns," the lecturer had no

*Vergennes Union High School Bd. of Directors*, 475 F.Supp. 615, 622 (D.Vt. 1979) ("Nor do we believe that school librarians have an independent first amendment right to control the collection of the school library under the rubric of academic freedom. The selection of works for the library is a curricular rather than a methodological matter, and public secondary school boards have considerable discretion as to the substantive content of the curriculum.") (citation and internal quotation marks omitted), aff'd 638 F.2d 438 (2nd Cir. 1980).

Applying the foregoing factors, the Court finds, as a matter of law, that Plaintiff's use of the suicide video during his Criminal Justice class was not protected speech, since he was not speaking as a private citizen on a matter of public concern. According to the Complaint, Plaintiff used the suicide video as part of the curriculum of the class, in order to demonstrate "the science and math of ballistics and the effects of bullets on human bodies." Accordingly, Plaintiff was acting in his capacity as a teacher, and not as a private citizen, when he used the suicide video.[4] See, *Panse v. Eastwood*, No. 06 Civ. 6697(SCR), 2007 WL 2154192 at *4 (S.D.N.Y. Jul. 20, 2007) (Holding that statements by high school art teacher made "pursuant to his official duties as an art teacher" were not protected speech). Moreover, although Plaintiff makes the conclusory assertion that the video touched on "issues of public concern and interest to the classes being taught by

First Amendment right to use the photographs. *Id.*, 42 F.3d at 723-24 (Citing *Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260, 273, 108 S.Ct. 562, 571 (1988), which held that "educators do not offend the First Amendment by exercising editorial control over the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns."). The *Silano* decision did not involve an employee retaliation claim, inasmuch as the lecturer was an unpaid, guest lecturer.

[4]See Plaintiff's Memo of Law at 6 ("He was disciplined for the content of an instructional video he used in teaching teachers about issues in ballistics and criminal justice, the areas in which he was employed to teach.")

[him]," the Court finds that the suicide video did not "address a matter of public concern" in the constitutional sense.[5] Apart from making generalized arguments about the importance of "academic freedom," Plaintiff has not explained how his use of the suicide video amounts to protected activity. (See, Plaintiff's Memo of Law at 7-8).

Moreover, to the extent that Plaintiff maintains that his suspension and termination were partially in retaliation for his having arrested a BOCES student,[6] he has not alleged facts that raise this conclusory claim of retaliation above the speculative level.[7] For example, the Complaint fails to allege any facts to suggest a plausible causal connection between his termination and the arrest, which apparently occurred one year earlier. Moreover, the fact that Plaintiff made an arrest in his capacity as a police officer does not amount to protected activity. See, *Hargraves v. City of Philadelphia*,Civil Action No. 05-CV-4759, 2007 WL 1276937 at *5 (E.D.Pa. Apr. 26, 2007) ("Contrary to Plaintiff's argument, the mere performance of job duties, in this case, making arrests and following police procedure in reporting drug money, are simply not protected activities.") (citations omitted).  For example, Plaintiff does not allege that he went public with the information that Glover allegedly attempted to "suppress and cover up" the arrest, or did anything other than perform his job duties. *See, Gonzalez v. City of Chicago*, 239 F.3d 939, 941

---

[5] See Plaintiff's Memo of Law at 6 ("The intent of the video presentation was to debunk the myths associated with the effects ballistics have on the human body.")

[6] The Complaint alleges that Glover was motivated, "at least in part," by a desire to punish Plaintiff in retaliation for Plaintiff's prior arrest of a BOCES student, which, according to Plaintiff, Glover had wanted to "suppress and cover up." (Complaint ¶ 19).

[7] Plaintiff does not specifically allege that he engaged in protected activity by making the arrest. Rather, he indicates only that the prior arrest may have been a factor in Glover's decision to terminate his employment, since Glover bore him "personal hostility and malice" as a result of making the arrest. (Kenney Affidavit ¶ ¶ 15-16).

(7th Cir. 2001) ("If Gonzalez were writing reports of police misconduct, and his supervisors told him to rewrite the reports so as not to disclose police corruption, Gonzalez would have a First Amendment right to expose the police cover-up to the public. But in that circumstance, Gonzalez would be acting beyond his employment capacity. Instead of simply performing his job of writing truthful, internal reports, he would be speaking as a citizen on a matter of public concern-a police cover-up."). Consequently, Plaintiff has not stated a retaliation claim involving the previous arrest.

The complaint fails to state a claim for free-speech retaliation.  Moreover, it does not appear that Plaintiff could correct the aforementioned defects by amending his Complaint.  Consequently, Defendants' motion to dismiss the retaliation claims is granted, and Plaintiff's cross-motion for leave to amend is denied.

*The Court declines to exercise jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367(c)(3)*

Having dismissed Plaintiff's free speech claims, the only remaining claims are tort claims arising under state law.  As to those, 28 U.S.C. § 1367(c)(3) states, in relevant part, that "[t]he district courts may decline to exercise supplemental jurisdiction over a [state-law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction."  The decision whether to exercise supplemental jurisdiction over the remaining state-law claims is left to the court's discretion. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 392 (2d Cir. 2007).  In that regard,

> [o]nce a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity, in deciding whether to exercise jurisdiction.  In weighing these factors, the district court is aided by the Supreme Court's additional guidance in [*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108

S.Ct. 614, 98 L.Ed.2d 720 (1988)] that "in the usual case in which all
federal-law claims are eliminated before trial, the balance of factors ... will
point toward declining to exercise jurisdiction over the remaining state-law
claims."  484 U.S. at 350 n. 7, 108 S.Ct. 614.

*Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (citation and

internal quotation marks omitted).  Here, after weighing the *Cohill* factors set forth above,

the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-

law claims, which were removed to this Court from New York State Supreme Court,

Genesee County.

CONCLUSION

Defendants' motion to dismiss [#8] is granted in part as follows: Plaintiff's federal

and state-law free-speech retaliation claims are dismissed with prejudice pursuant to

FRCP 12(b)(6), and pursuant to 28 U.S.C. § 1367(c)(3) the Court declines to exercise

jurisdiction over the remaining claims, which, accordingly, are dismissed without

prejudice. See, *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 273 (2d Cir.

1999) (Affirming the dismissal of state law claims without prejudice pursuant to 28 U.S.C.

§ 1367(c)(3)).  The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Rochester, New York
     February 6, 2008          ENTER:


               /s/ Charles J. Siragusa
              CHARLES J. SIRAGUSA
              United States District Judge